1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THOMAS A. WALLING, III,<br><br>             Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of the Social Security Administration,<br><br>             Defendant. | CASE NO. 11cv5204-JRC<br><br>ORDER ON PLAINTIFF'S<br>COMPLAINT |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, ECF No. 7; Consent to Proceed Before a United

States Magistrate Judge, ECF No. 8). This matter has been fully briefed (*see* ECF Nos.

22, 26, 27).

The ALJ failed in his duty to develop the record regarding plaintiff's alleged

hearing loss. Despite objective medical evidence demonstrating plaintiff's hearing loss,

the ALJ failed to include limitations in plaintiff's residual functional capacity to account specifically for hearing loss and did not explain adequately the basis for this failure.

Because this error was not harmless, this matter shall be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings.

<u>BACKGROUND</u>

Plaintiff, THOMAS A. WALLING, III, was born in 1962 and was twenty-six years old on his alleged date of disability onset of February 28, 1989 (*see* Tr. 157). Plaintiff has worked in construction (*see* Tr. 271). Plaintiff was seen with complaints of "chronic intermittent drainage in his right ear and decreased hearing in his right ear" on August 30, 1990 and on January 2, 1991 (Tr. 318). Dr. Peter Andersen, M.D. assessed "a potentially life-threatening problem," and indicated that surgery was necessary in order to remove plaintiff's bilateral cholesteatomas (*id.*). In 1992, plaintiff had two surgeries on his ears (Tr. 279-81, 302-04).

<u>PROCEDURAL HISTORY</u>

Plaintiff filed applications for disability insurance benefits pursuant to Title II of the Social Security Act ("the Act") and for supplemental security income pursuant to Title XVI of the Act (*see* Tr. 7, 157-62). Plaintiff's applications were denied initially and following reconsideration (Tr. 7, 133-35, 137-38). Plaintiff's requested hearing was held on his Title II claim, which was denied by a written decision dated February 4, 2009 (*see* Tr. 7, 65-105). In this decision, the ALJ found that plaintiff was not disabled between

February 28, 1989, the alleged onset date and March 31, 1993, the date last insured (*see* Tr. 63).

Following plaintiffs' appeal, the Appeals Council determined that plaintiff had filed a concurrent Title XVI application in addition to the Title II claim addressed in the February 4, 2009 written decision (*see* Tr. 7, 44-46). The Appeals Council found that the February 4, 2009 decision did not adjudicate the appropriate period of time, as it only covered the period of time until plaintiff's date last insured, and that the Title XVI claim thereby was not adjudicated properly (*see* Tr.  45). Therefore, the matter was remanded to the ALJ for further administrative proceedings, including a new decision (Tr. 45). In doing so, the Appeals Council vacated the February 4, 2009 hearing decision (*see* Tr. 44).

A supplemental hearing was held before Administrative Law Judge Richard A. Say ("the ALJ") on October 28, 2009 (*see* Tr. 106-30). On November 24, 2009, the ALJ issued a written decision in which he found that plaintiff was not disabled as defined in the Act from plaintiff's alleged onset date of disability of February 28, 1989 through the date of the decision (*see* Tr. 4-18).

On January 12, 2011, the Appeals Council denied plaintiff's request for review, making the October 28, 2009 written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). *See* 20 C.F.R. § 404.981. On March 16, 2011, plaintiff attached his complaint to his Motion to Proceed *in Forma Pauperis* (*see* ECF No. 1, 5). On July 8, 2011, the sealed administrative record regarding this matter ("Tr.") was filed by defendant (*see* ECF Nos. 11, 12).

In his Opening Brief, plaintiff argues that the ALJ: (1) failed in his duty to develop the record with respect to plaintiff's hearing loss; (2) failed to evaluate properly plaintiff's credibility; (3) failed to evaluate properly plaintiff's residual functional capacity; and (4) failed to evaluate properly lay witness statements (*see* ECF No. 22, pp. 1-2). Plaintiff contends that this matter should be reversed and remanded for further proceedings as the record is not developed sufficiently to remand with a direction for an award of benefits (*id.* at 18).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also  Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency

1  did not invoke in making its decision") (citations omitted). For example, "the ALJ, not

2  the district court, is required to provide specific reasons for rejecting lay testimony."

3  *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir.

4  1993)). In the context of social security appeals, legal errors committed by the ALJ may

5  be considered harmless where the error is irrelevant to the ultimate disability conclusion

6  when considering the record as a whole. *See Molina, supra*, 2012 U.S. App. LEXIS 6570

7  at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S.

8  396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

9
                                    DISCUSSION

10
11     1.  <u>The ALJ failed in his duty to develop the record fully and fairly regarding</u>

12         <u>plaintiff's hearing.</u>

13         The ALJ "has an independent 'duty to fully and fairly develop the record.'"

14  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80

15  F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's "duty exists even when the claimant is

16  represented by counsel." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983) (per

17  curiam) (*citing Driggins v. Harris*, 657 F.2d 187, 188 (8th Cir. 1981)).  This duty is

18  "especially important when plaintiff suffers from a mental impairment." *Delorme v.*

19  *Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991). However, the ALJ's duty to supplement the

20  record is triggered only if there is ambiguous evidence or if the record is inadequate to

21  allow for proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60

22  (9th Cir. 2001); *Tonapetyan, supra*, 242 F.3d at 1150.

23
24

The ALJ found that plaintiff had the severe impairment of chronic ear infections with hearing loss (*see* Tr. 10); however the ALJ failed to include any limitations on plaintiff's residual functional capacity ("RFC") as a result of plaintiff's hearing loss other than the need to avoid exposure to noisy environments (*see* Tr. 12). The ALJ did not explain adequately his failure to include hearing loss in plaintiff's RFC or in the hypothetical presented to the vocational expert ("VE"), as discussed further below. As the ALJ relied explicitly on the VE's testimony in order to make his Step Five finding that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," this was not harmless error (*see* Tr. 17-18).

In February, 1992, plaintiff underwent surgery on his right ear, after a CT scan revealed the presence of extensive cholesteatoma in both ears (*see* Tr. 302, 316-17). Multiple ear bones had erosion and were removed, and the treatment record indicates that the "eustachian tube opening was found to be patent and there was no tympanic membrane covering it" (*see* Tr. 302). An audiogram conducted in March, 1992 indicates that plaintiff's speech discrimination was 96% in his left hear and only 68% in his right ear (Tr. 299). On July, 14, 1992, plaintiff underwent surgery on his left ear (*see* Tr. 279-80). It was noted at this time that plaintiff had "postoperative sensory neural hearing loss" (Tr. 279). Plaintiff has reported awakening during surgery and having to be re-anaesthetized (*see* Tr. 456).

On July 29, 1992, approximately two weeks after his second surgery, plaintiff appears to have reported that his pain was down and his hearing ability was increased (*see* Tr. 276). In September 25, 1992, plaintiff's speech discrimination in his left ear was

84% (*see* Tr. 290). An undated audiogram indicates greater level of hearing loss (Tr. 481).

Plaintiff was examined by Dr. Samuel Gubbels, M.D. ("Dr. Gubbels"), on March 7, 2003 (Tr. 271-72). Dr. Gubbels indicated plaintiff's subjective report that "plaintiff states that he had a complete loss of his hearing on the right side after the surgery and a 60% loss of hearing on the left" (*see* Tr. 271). Dr. Gubbels indicated what appears to be plaintiff's subjective report that "his hearing overall does not seem to be changed" (*id.*). It does not appear from this treatment report that Dr. Gubbels tested plaintiff's hearing.

However, Dr. Gubbels performed an otomicroscopy on plaintiff (Tr. 272). Dr. Gubbels observed in plaintiff's right ear that there was a "mild amount of erythema and honey crusting overlying the area;" the "cartilaginous external auditory canal [wa]s mildly stenotic; there [wa]s a mucoid discharge in the external auditory canal that [wa]s suctioned, revealing a granulation tissue underneath it with notable tenderness; Mastoid ball [wa]s full of cerumen;" and plaintiff's tympanic membrane was thickened and mildly erythematous (*see* Tr. 272).

Defendant provided a few reasons as to why it may have been acceptable for the ALJ to fail to include plaintiff's hearing loss into the RFC (*see* Response, ECF No. 26, pp. 8-9). However, these reasons were not provided by the ALJ in his October 28, 2009 decision and "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing Chenery Corp.*, *supra*, 332 U.S. at 196 (other citation omitted); *see also Molina, supra*, 2012 U.S. App. LEXIS

1    6570 at *42; *Stout, supra*, 454 F.3d at 1054 (the court generally does not "affirm the

2    decision of an agency on a ground that the agency did not invoke in making its

3    decision"). The Court notes, however, that despite defendant's argument that plaintiff

4    indicated that he was "doing well," he also indicated at this same doctor's appointment

5    that he had a complete loss of hearing on the right side and a 60% percent loss on the left

6    side (*see* Tr. 271).

7           The record in this matter contains evidence that plaintiff suffered from hearing

8    loss and the ALJ found that plaintiff had the severe impairment of chronic ear infections

9    with hearing loss (*see* Tr. 10). The record is ambiguous regarding whether or not

10   plaintiff's alleged hearing loss resulted in any functional limitations that should have

11   been taken into consideration as part of plaintiff's RFC. *See Mayes, supra*, 276 F.3d at

12   459-60; *Tonapetyan, supra*, 242 F.3d at 1150. The record is inadequate to allow for

13   proper evaluation of the evidence regarding plaintiff's hearing loss and any functional

14   limitation which may have existed. *See Mayes, supra*, 276 F.3d at 459-60; *Tonapetyan,*

15   *supra*, 242 F.3d at 1150.

16          This error was not harmless, as the ALJ relied on the VE's testimony and this

17   testimony was based on a hypothetical that included the avoidance of noisy environments

18   as the only limitation required as a result of plaintiff's alleged hearing loss (*see* Tr. 12,

19   17-18). Therefore, the Court cannot affirm the ALJ's ultimate finding regarding disability

20   and this matter shall be reversed and remanded to the Commissioner for further

21   administrative proceedings.

2.  <u>Plaintiff's credibility and testimony, along with the lay evidence and plaintiff's</u>
    <u>RFC, should be evaluated anew following remand of this matter</u>.

Although the ALJ provided numerous legitimate reasons for his failure to credit fully plaintiff's credibility, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). The Court already has determined that this matter must be reversed and remanded for further evaluation as a result of the failure to evaluate properly one aspect of the medical evidence, *see supra*, section 1. Following remand, an administrative law judge will issue a new decision. For this reason, plaintiff's credibility should be evaluated anew following remand of this matter.

In a similar fashion, the lay evidence should be evaluated anew. The residual functional capacity ("RFC") determination relies heavily on an analysis of the medical evidence, and this determination must be made anew, specifically, the aspect regarding plaintiff's hearing loss.

<u>CONCLUSION</u>

The ALJ failed to develop the record regarding plaintiff's hearing loss and the ambiguous record regarding any functional limitations in plaintiff's residual functional capacity as a result of his hearing loss other than avoidance of noisy environments.

Based on this reason and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

ORDER ON PLAINTIFF'S COMPLAINT - 10

1    **JUDGMENT** should be for plaintiff and the case should be closed.

2    Dated this 20th day of July, 2012.

3

4    _____
     J. Richard Creatura
5    United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 11